UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

| | |
|---|---|
| ANDREA MCDANIEL, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LIFE INSURANCE COMPANY | ) |
| OF NORTH AMERICA, | ) |
| Defendant. | ) |

**COMPLAINT**

COMES NOW Plaintiff, Andrea McDaniel, and for her claims and causes of action against Defendant, Life Insurance Company of North America, states:

PARTIES

1. Andrea McDaniel ("McDaniel") is a resident and citizen of the State of Kansas.

2. Life Insurance Company of North America ("LINA") is an out of state insurance company authorized to do business in the State of Kansas.

JURISDICTION AND VENUE

3. McDaniel brings her claim pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq*.

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the District of Kansas under 29 U.S.C. § 1132(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

9. Trial is to be held in Kansas City, Kansas.

STATEMENTS OF FACT

10. At all times relevant, Kazoo, Inc. ("Kazoo") employed McDaniel as a software engineer.

11. Kazoo sponsored a group welfare benefits plan for its participating employees ("Plan").

12. The Plan constitutes an employee welfare benefit plan as defined by 29 U.S.C. § 1002(1).

13. The Plan offered long-term disability ("LTD") benefits.

14. At all relevant times, McDaniel has been a Plan participant and covered person.

15. Kazoo is the administrator of the Plan.

16. Kazoo delegated to LINA the function of issuing LTD benefit claim determinations.

17. LINA's group insurance policy ("Policy") articulates the conditions that covered Plan participants must satisfy to receive LTD benefits.

18. The Policy defines Disability or Disabled as:

> **Definition of Disability/Disabled**
> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
> 1. unable to perform the material duties of his or her Regular Occupation; and
> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> 2. unable to earn 60% or more of his or her Indexed Earnings.

19. The Policy defines Regular Occupation as:

> **Regular Occupation**
> The occupation the Employee routinely performs at the time the Disability begins. In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location.

2

20. In 2019, McDaniel sought medical leave under the Family Medical Leave Act ("FMLA").

21. Family medicine physician Sara Hicks, MD certified McDaniel's FMLA leave.

22. On August 19, 2019, McDaniel worked for the final time.

23. McDaniel ceased working due to a combination of physical, cognitive, and vision impairments.

24. McDaniel sought short-term disability ("STD") benefits from LINA.

25. McDaniel struggled to deal with the paperwork and maintenance of her STD claim. On September 18, 2019, McDaniel's husband provided LINA with her authorization allowing him to facilitate her claim with LINA.

26. On September 20, 2019, surgeon William Rosenberg, MD opined that McDaniel would need to remain out of work due to her condition and the need for surgery. He indicated that she should not drive and would have a difficult time performing activities of daily living.

27. On September 28, 2019, Dr. Hicks opined that McDaniel was limited by the cognitive side effects of her pain medication. Dr. Hicks also opined that McDaniel was physically limited.

28. On October 2, 2019, Mrs. McDaniel underwent a sacroiliac joint fusion.

29. On October 23, 2019, Dr. Rosenberg completed LINA's Attending Physician Statement indicating that McDaniel should remain off of work through at least January 2, 2020.

30. On December 2, 2019, Dr. Rosenberg verified and extended McDaniel's work restrictions.

31. LINA ultimately approved McDaniel's STD claim in full, finding that she was incapable of performing her occupation.

32. McDaniel applied for LTD benefits with LINA.

33. McDaniel also applied for disability benefits with the Social Security Administration, as required by the Policy.

34. On December 17, 2019, Cigna wrote to McDaniel confirming that it had approved her LTD claim. It ultimately issued retro-payment for LTD benefits effective November 18, 2019.

35. Following surgery, McDaniel underwent physical therapy, epidural injections, nerve ablations, and other medical treatment.

36. Finding little relief, McDaniel was fitted for and began using a wheelchair.

37. McDaniel underwent a neuropsychological evaluation with Neal Deutch, PhD. McDaniel's scores in visual scanning were extremely low. She also exhibited extremely low sustained concentration and sequencing.

38. McDaniel received vision rehabilitation and treatment with John Metzger, OD. Dr. Metzger opined that McDaniel's vision loss should be treated as a health-related issue and not merely "as a refractive condition." Dr. Metzger assessed post-concussive vision syndrome, as well as a visuospatial deficit.

39. On February 14, 2020, a LINA case management nurse noted that Dr. Rosenberg's office does not opine on work restrictions beyond 12 weeks. LINA recommended further review.

40. On February 17, 2020, LINA requested information from Dr. Hicks about McDaniel's limitations. Dr. Hicks opined that McDaniel should remain off work until she is able to successfully rehabilitate.

41. LINA referred McDaniel's claim to Donald W. Minteer, Jr., DO. On March 3, 2020, Dr. Minteer opined that McDaniel was limited to sedentary work and could only occasionally stand and ambulate with the use of a cane.

42. Dr. Minteer warranted that his opinion was consistent with the DMS Expert Resource Professional Conduct Statement.

43. On March 4, 2020, LINA referred McDaniel's claim to rehabilitation consultant, Perry

Glaze. Glaze found McDaniel's limitations did not preclude her from sedentary work.

44. On March 23, 2020, LINA issued a decision terminating McDaniel's LTD claim and payment of benefits beyond March 19, 2020.

45. LINA provided McDaniel with a copy of her claim file.

46. LINA's claim file did not contain the DMS Expert Resource Professional Conduct Statement referenced by Dr. Minteer.

47. On September 16, 2020, McDaniel appealed LINA's decision denying her claim to LTD benefits. McDaniel's appeal contained additional evidence and argument.

48. McDaniel's appeal also contained requests that LINA share information about peer review, information about the third-party organizations responsible for medical consultants, and those consultants' curriculum vitae.

49. On September 17 and September 29, 2020, LINA acknowledged receipt of McDaniel's appeal.

50. On November 23, 2020, McDaniel requested from LINA additional time to provide updated medical records.

51. On December 7, 2020, McDaniel provided to LINA updated treatment notes, as well as an opinion from Dr. Hicks. Dr. Hicks opined that McDaniel's medical impairment precluded her from sustaining the complex cognitive and social demands required of a software engineer.

52. On December 22, 2020, LINA notified McDaniel that it would proceed with its review.

53. On January 19, 2021, LINA notified McDaniel that it required additional time to complete its review.

54. On February 16, 2021, LINA notified McDaniel that it required additional time to complete

its review.

55. On February 23, 2021, LINA provided to McDaniel its provisional decision on her claim. It also made available the reports of its reviewing consultants, Matthew Chan, MD, Akhil Chhatre, MD, and Julie Guay, PsyD. While Dr. Chan found that McDaniel suffered from functional limitations, Dr. Chhatre and Dr. Guay opined that McDaniel was entirely unimpaired from a functional perspective.

56. LINA hired these consultants through its regular vendors with which it has a longstanding business arrangements. Those include Dane Street and Exam Coordinators Network, a division of Genex Services, LLC.

57. On March 2, 2021, McDaniel responded to LINA's February 23, 2021 provisional decision. McDaniel provided updated medical records and noted that Dr. Chan's opinion initially contained a limitation against computer screen work, but that the limitation was later removed. McDaniel also disputed the credibility and reliability of Dr. Guay's and Dr. Chhatre's opinions.

58. On March 22, 2021, LINA provided to McDaniel updated consultant reports confirming receipt of the records McDaniel sent on March 2, 2021.

59. On March 27, 2021, McDaniel responded to LINA, advising that her March 2, 2021 arguments were not addressed and that further response would be futile.

60. On March 31, 2021, LINA issued its final decision on McDaniel's claim. LINA upheld its decision terminating benefits.

61. McDaniel has exhausted administrative remedies.

62. McDaniel remains Disabled as defined the Policy.

CAUSES OF ACTION
COUNT I
29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

63. McDaniel realleges the preceding paragraphs as if fully set forth herein.

64. McDaniel is entitled to all unpaid and accrued LTD benefits, as LINA:

   a. Made an unfavorable decision without substantial evidence;

   b. Failed to properly consider each of McDaniel's medical impairments and resulting limitations;

   c. Mischaracterized medical records and opinions;

   d. Mischaracterized McDaniel's complaints, symptoms, medical conditions, abilities, and functional limitations; and

   e. Issued an unfavorable decision that was arbitrary and capricious.

65. Pursuant to 29 U.S.C. § 1132(a)(1)(b), McDaniel is entitled to an award of actual damages for losses suffered.

66. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

67. LINA has not satisfied its obligation to pay McDaniel LTD benefits.

68. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), McDaniel prays for judgment against LINA for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

COUNT II
29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

69. McDaniel realleges the preceding paragraphs as if fully set forth herein.

70. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

   "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for

      a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

71. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

      "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

72. As the Plan's designated claims administrator and entity exercising discretion in claims administration, LINA is a fiduciary.

73. McDaniel participated in and benefitted from the Plan as previously indicated.

74. As the payor of benefits and the entity responsible for benefits determinations LINA operates under an inherent structural conflict of interest.

75. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs LINA's actions as a fiduciary.

76. LINA failed to provide McDaniel with the DMS Expert Resource Professional Conduct Statement relied upon by Dr. Minteer and its claims handling procedures and guidelines. In doing so, LINA breached its fiduciary duties and the demands of 29 C.F.R. § 2560.503-1(h)(2)(iii) and § 2560.503-1(m)(8).

77. In failing to adequately apply the Policy's applicable provisions, including each component of the definitions of "Disability" and "Regular Occupation."

78. LINA's review was inconsistent with its own guidelines and procedures. Its claims handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving medical and vocational consultants. In failing to comply with its internal guidelines and claims processing

procedures, LINA breached its fiduciary duties.

79. LINA did not compensate and use its medical and vocational consultants for the exclusive purpose of providing benefits to Plan participants. Nor did it do so for the purpose of defraying reasonable expenses in administering the Plan. Rather, LINA contracted with these vendors and consultants for the purpose of denying benefits, compensating them at rates that did not comport with its duty to defray reasonable expenses. This conduct is indicative of a breach of LINA's fiduciary duties.

80. LINA breached its fiduciary duties by automatically accepting the findings of reports provided by its paid reviewers – a systematic practice in its claim administration.

81. LINA breached its fiduciary duty in ignoring McDaniel's requests that LINA identify the third-party organizations responsible for evidence from medical consultants, as well as those consultants' curriculum vitae and any preferred reports.

82. LINA did not cooperate in good faith with McDaniel's procedural requests made on appeal.

83. LINA denied McDaniel's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

84. LINA failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both McDaniel and the Plan's participants and beneficiaries generally.

85. LINA's repeated improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

86. LINA's violations of regulations alone allow McDaniel the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(l)(2)(i).

87. LINA's violations of federal regulation also subject its decision to *de novo* review.

88. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), McDaniel prays for an order that LINA retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by LINA in its fiduciary capacity; for an equitable accounting of benefits that LINA has withheld; for the disgorgement of profits enjoyed by LINA in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; for an equitable order prohibiting LINA's use of Dane Street, Exam Coordinators Network, Genex Services, LLC, and other partial medical consultant entities; for an equitable order removing LINA as the administrator of claims; and for further relief as the Court deems just.

                Respectfully submitted,

                BURNETTDRISKILL, LLC

            By:  /s/ Derrick A. Pearce
                Derrick A. Pearce, Mo. # 16572
                Kyle H. Sciolaro, Kan. # 24991
                103 W 26th Ave., Ste. 290
                North Kansas City, MO  64116
                P: 816.781.4836
                F: 816.792.3634
                dpearce@burnettdriskill.com
                ksciolaro@burnettdriskill.com
                ATTORNEYS FOR PLAINTIFF